UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN BELL,<br><br>    Plaintiff,<br><br>v.<br><br>VELOCITY INVESTMENTS, LLC,<br><br>    Defendant. | Case No.  1:20-cv-30<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Ryan Bell ("Plaintiff") brings this action against Velocity Investments, LLC ("Defendant"), and alleges as follows:

**NATURE OF THE ACTION**

1. This action is brought against Defendant for its violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. §§ 2270 *et seq.*, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201 *et seq.*

**JURISDICTION AND VENUE**

2. The Court has subject matter jurisdiction of Plaintiff's federal law claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k.

3. The Court has subject matter jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claims that they form part of the same case or controversy.

4. The Court has personal jurisdiction over Defendant because Plaintiff's claims arose in this district and Defendant does substantial business in this district.

1

5. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events and/or omissions at issue occurred in this district.

## PARTIES

6. Plaintiff Ryan Bell is a natural person residing in Venango County, Pennsylvania.

7. Defendant Velocity Investments, LLC is a limited liability company with its principal place of business in Wall, New Jersey.

8. Velocity's sole business is purchasing defaulted consumer debt with the purpose of collecting consumer debt for profit.

9. This includes purchasing defaulted consumer loans from consumer discount companies licensed under the CDCA (defined below).

10. Velocity collects the debt it purchases, either directly or indirectly, by calling consumers, sending consumers letters, and filing lawsuits against consumers.

11. Defendant uses instrumentalities of interstate commerce, such as telephone, mail, and the internet, to collect debt.

## THE CONSUMER DISCOUNT COMPANY ACT

12. The Consumer Discount Company Act ("CDCA"), 7 Pa. Stat. §§ 6201, *et seq.*, is a consumer protection law enacted by the Pennsylvania legislature in 1937.

13. The CDCA regulates personal consumer loans in amounts of $25,000 or less, with interest and fees that aggregate in excess of the six percent interest rate cap set forth in the Loan Interest Protection Law ("LIPL"). 7 Pa. Stat. § 6203; 41 Pa. Stat. § 201(a).

14. The CDCA requires a consumer discount company license to collect or receive interest and fees in excess of the LIPL's interest rate cap. 7 Pa. Stat. § 6203.A.

15. Consumer discount company licenses issued under the CDCA are not assignable. 7 Pa. Stat. § 6208.

16. Licensed consumer discount companies cannot assign their rights under the CDCA to collect or receive interest and fees that exceed the LIPL's interest rate cap. 10 Pa. Code § 41.6(a).

17. The CDCA prohibits unlicensed debt buyers from purchasing CDCA loans from licensed consumer discount companies unless the Department of Banking issues prior written approval. 7 Pa. Stat. § 6214.I; 10 Pa. Code § 41.6(a).

18. The Department issues prior written approval for loan transfers from licensed consumer discount companies to unlicensed debt buyers only if unlicensed debt buyers agree to forgo collecting or receiving previously charged or precomputed interest or fees in excess of the LIPL's six percent interest rate cap. *See* Letter, Department of Banking, p. 22 (Nov. 19, 2001) (attached as "Exhibit A") (stating unlicensed entities buying CDCA loans from consumer discount companies with written approval from the DOB must "ensure that every loan contract [they] acquire[] d[oes] not already include in the balance owed interest, fees and other charges in excess of the general usury limit"); Letter, Department of Banking, p. 3 (Sept. 18, 2003) (attached as "Exhibit B") (stating transfer of CDCA loan from a licensed consumer discount company to an unlicensed entity would be approved only if the unlicensed entity "collect[ed] from consumers the general Pennsylvania usury rate of 6% simple interest *per annum*"); Letter, Department of Banking, p. 1 (Jan. 12, 2004) (attached as "Exhibit C") (approving transfer of CDCA loans from a licensed consumer discount company to an unlicensed debt purchaser, and stating that the unlicensed entity "may only collect the general Pennsylvania usury rate of 6% simple interest *per annum* and may not impose any other charges").

**FACTUAL ALLEGATIONS**

19.  On August 23, 2019, Defendant sued Plaintiff in a Venango County Magesterial District Court (the "Lawsuit").

20.  Defendant claimed it was assigned a personal loan issued to Plaintiff and used for personal, family, or household purposes (the "Account").

21.  Based on documents Defendant produced in the Lawsuit, the Account was issued by OneMain Financial.

22.  Based on documents Defendant produced in the Lawsuit, the Account was issued in the amount of $9,725.48.

23.  Based on documents Defendant produced in the Lawsuit, the Account consisted of $5,050.13 in principal, a $384.22 charge for credit life insurance, $4,118.25 in precomputed interest, a $150.00 precomputed service charge, and a $22.88 precomputed deferment fee.

24.  Based on documents Defendant produced in the Lawsuit, the Account was to be repaid over a five year (60 month) time period.

25.  Based on documents Defendant produced in the Lawsuit, the interest and fees on the Account combined to equal a 25.69% annual percentage rate.

26.  Based on documents Defendant produced in the Lawsuit, Defendant purchased the Account for $337.86.

27.  Despite the fact that Defendant purchased the Account for $337.86, Defendant sued Plaintiff for $5,361.01 on the Account.

28.  In the Lawsuit, Defendant sought to collect and receive precomputed interest and fees in excess of the LIPL's six percent interest rate cap.

29.  Plaintiff contested the Lawsuit Defendant filed against him.

30. On October 10, 2019, Plaintiff obtained a judgment against Defendant in the Lawsuit.

31. The Lawsuit Defendant filed against Plaintiff constituted as an unlawful, unfair, and deceptive means to collect a debt because Defendant was not lawfully permitted to purchase the Account from OneMain Financial.

32. The Account was covered by the CDCA because it was a personal consumer loan in an amount of $25,000 or less with interest, fees, and other charges that aggregated above the LIPL's six percent interest rate cap. 7 Pa. Stat. §§ 6203.A, 6213.

33. OneMain Financial was licensed as a consumer discount company under the CDCA at the time of the alleged issuance and subsequent transfer of the Account.

34. Defendant was not licensed as a consumer discount company under the CDCA at the time Defendant allegedly purchased the Account from OneMain Financial.

35. Defendant was not licensed as a consumer discount company under the CDCA at the time Defendant sued Plaintiff, or at any other time during which Defendant attempted to collect the Account from Plaintiff.

36. Since Defendant was not licensed as a consumer discount company under the CDCA, and since the Account was purchased from a licensed consumer discount company, Defendant could not lawfully purchase the Account. 7 Pa. Stat. § 6214.I; 10 Pa. Code § 41.6(a).

37. The only way Defendant could have lawfully purchased the Account was with written approval by the Department of Banking. *Id.*

38. The Department approves unlicensed loan transfers only if the unlicensed entity agrees to forgo collecting or receiving previously charged or precomputed interest or fees that exceed the LIPL's six percent interest rate cap. *See* Ex. A, p. 22; Ex. B, p. 3; Ex. C, p. 1.

39. Defendant and OneMain failed to obtain the required approval for the purchase or sale of the Account from the Department because, when Defendant sued Plaintiff, Defendant attempted to collect and receive precomputed interest and fees in excess of the LIPL's six percent interest rate cap.

40. Had Defendant or OneMain Financial obtained written approval for the purchase or sale of the Account, Defendant would have been legally and contractually prohibited from seeking to recover the interest and fees Defendant sought to collect. . *See* Ex. A, p. 22; Ex. B., p. 3; Ex. C, p. 1.

41. Defendant could not legally purchase the Account and OneMain Financial could not legally transfer the Account to Defendant.

42. The sale of the Account was void and legally unenforceable.

43. Defendant lacked lawful authority to collect the Account from Plaintiff or sue Plaintiff on the Account.

44. Alternatively, in the event Defendant obtained written approval from the Department of Banking to purchase the Account, Defendant was attempting to collect interest and fees Defendant was not lawfully or contractually permitted to collect.

45. The Department approves unlicensed loan transfers only if the unlicensed entity agrees to forgo collecting or receiving previously charged or precomputed interest or fees that exceed the LIPL's six percent interest rate cap. *See* Ex. A, p. 22; Ex. B, p. 3; Ex. C, p. 1.

46. If Defendant and OneMain Financial actually obtained written approval from the Department to buy or sell the Account, Defendant was lawfully and contractually obligated to forgo collecting or receiving any previously charged or precomputed interest or fees that exceeded the LIPL's six percent interest rate cap.

47. Yet when Defendant sued Plaintiff, Defendant attempted to collect and receive precomputed interest and fees that aggregated above the LIPL's six percent rate cap.

48. In the unlikely event Defendant could lawfully purchase the Account, Defendant could not legally or contractually collect or receive the interest and fees it sought to collect and receive from Plaintiff.

49. Defendant engaged in the conduct described herein on a systemic basis.

50. Defendant purchases large tranches of defaulted CDCA loans from OneMain Financial and other licensed consumer discount companies, and then tries to collect or receive the full amount of these loans from Pennsylvania consumers.

51. Defendant does so despite the fact that Defendant knows it is not licensed under the CDCA to purchase such loans.

52. Defendant does so despite the fact that Defendant knows it does not have approval from the Department of Banking to purchase such loans.

53. Alternatively, in the event Defendant obtained approval from the Department to buy CDCA loans, Defendant is intentionally disregarding its contractual and lawful obligations as part of those transfers to forgo collecting or receiving previously charged or precomputed interest or fees in excess of the LIPL's six percent rate cap.

54. Either way, Defendant is intentionally and knowingly acting in the face of its legal obligations, and is doing so on a widespread basis.

55. As a result of Defendant's actions, Plaintiff was required to retain and pay for the services of an attorney to defend the Lawsuit and lost money as a result.

56. Since Defendant lacked legal authority to file suit against Plaintiff, as explained above, Plaintiff should not have had to defend the Lawsuit.

57. As a result of Defendant's actions, Plaintiff suffered considerable anxiety, stress, confusion, and emotional distress.

58. Since Defendant did not have legal authority to file suit against Plaintiff, he was unfairly subjected to legal process, and Defendant misrepresented its ability to collect the Account through legal process, or at all.

## COUNT I
### Violation of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 *et seq.*

59. Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

60. Plaintiff is a consumer under the FDCPA, the Account is a debt under the FDCPA, and Defendant is a debt collector under the FDCPA. 15 U.S.C. §§ 1692a(3), (5), (6).

61. Defendant's actions and practices described herein constitute as: false, deceptive or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e; and/or unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

62. As a result of Defendant's failure to comply with the provisions of the FDCPA, and the resulting injury and harm Defendant's failure caused, Plaintiff is entitled to actual damages, statutory damages, and attorneys' fees and costs under 15 U.S.C. § 1692k.

## COUNT II
### Violation of the Fair Credit Extension Uniformity Act
### 73 Pa. Stat. §§ 2270 *et seq.*

63. Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

64. Plaintiff is a consumer under the FCEUA, the Account is a debt under the FCEUA, and Defendant is a debt collector or creditor under the FCEUA. 73 Pa. Stat. § 2270.3.

65. In the event Defendant is a debt collector, its actions and practices described herein constitute as unfair and/or deceptive debt collection acts or practices under the FCEUA because they violate 15 U.S.C. §§ 1692e and/or 1692f, as explained above. 73 Pa. Stat. § 2270.4(a).

66. In the event Defendant is a creditor, its actions and practices described herein constitute as unfair or deceptive debt collection acts or practices under the FCEUA because they constitute as: false, deceptive or misleading representations or means in connection with the collection of a debt; and/or unfair or unconscionable means to collect or attempt to collect a debt. 73 Pa. Stat. § 2270.4(b).

67. Defendant's engagement in unfair or deceptive debt collection acts or practices under the FCEUA constitute as violations of the UTPCPL. 73. Pa. Stat. § 2270.5(a).

68. Plaintiff lost money or property as a result of Defendant's violations and therefore is entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 Pa. Stat. § 201-9.2.

## COUNT III
### Violation of the Unfair Trade Practices and Consumer Protection Law
### 73 Pa. Stat. §§ 201-1 *et seq.*

69. Plaintiff repeats and re-alleges all prior allegations as if set forth at length herein.

70. Defendant and Plaintiff are persons under the UTPCPL, the Account arose from the purchase or lease of goods or services primarily for personal, family or household purposes under the UTPCPL, and Defendant's actions and practices described herein were conduct as part of trade or commerce under the UTPCPL. 73 Pa. Stat. §§ 201-2(2)-(3), 201-9.2.

71. Defendant's actions and practices described herein constitute as unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because Defendant is

9

engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 Pa. Stat. § 201-2(4)(xxi).

72. Defendant's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce is in violation of 73 Pa. Stat. § 201-3.

73. Plaintiff lost money or property as a result of Defendant's violations and therefore is entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 Pa. Stat. § 201-9.2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. An order awarding actual, statutory, treble, and all other damages available by law, along with pre-and post-judgment interest;

b. An order awarding attorney's fees and costs;

c. An order declaring Defendant's conduct unlawful; and

d. An order awarding all other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 3, 2020        By:   */s/ Kevin Abramowicz*
Kevin Abramowicz
**BCJ Law LLC**
186 42nd Street
P.O. Box 40127
Pittsburgh, PA 15201
(412) 223-5740
kevina@bcjlawyer.com

*Attorney for Plaintiff*

10